# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

MONTRELL DASHONE VENTRY                                                    PLAINTIFF
ADC #141556

V.                          No. 5:18-CV-00301-KGB-JTR

MARY SEALS, Nurse, Correct Care
Solutions, ADC Cummins, *et al.*                                          DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Baker may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction

In his *pro se* § 1983 Complaint, Declaration, Memorandum of Law and Amended Complaint (*Docs. 2, 3, 4 & 48*)[1] Plaintiff Montrell Ventry ("Ventry"), an

---

[1]The Court has construed Ventry's *pro se* pleadings, together, as constituting his claims. *See Cooper v. Schriro*, 189 F.3d 781, 783 (8th Cir. 1999) (*pro se* pleadings must be liberally construed).

inmate in the Cummins Unit of the Arkansas Division of Corrections ("ADC"), alleges that Defendants Nurse Mary Seals ("Seals"), APRN LaSonya Griswold ("APRN Griswold"), and Nurse Andria Cantrell ("Cantrell") provided inadequate medical care on December 7, 2017, when he was suffering from complications of dehydration, including "extreme discomfort" in his chest, lightheadedness and dizziness, numbness and immobility "from head to toe," severe cramping, and an elevated heart rate.

After screening his pleadings,[2] the Court allowed Ventry to proceed with his claim that APRN Griswold, Cantrell, and Seals were deliberately indifferent to his serious medical needs. *Doc. 11*.[3]

Defendants APRN Griswold and Cantrell have filed a Motion for Summary Judgment, Statement of Undisputed Facts and Brief in Support. *Docs. 78–80*. Ventry filed a Response to the Motion. *Doc. 84.* Defendant Seals has never been properly served and the time for doing so has long passed. *See* Fed. R. Civ. P. 4(m).

---

[2]The Prison Litigation Reform Act requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or a portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b). When making this determination, a court must accept the truth of the factual allegations contained in the complaint, and it may consider documents attached to the complaint. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

[3] The screening order also allowed Ventry to proceed with his claim against Defendants ADC Director Wendy Kelley ("Kelley") and Warden William Straughn ("Straughn") (*Docs. 11*), but the Court later granted summary judgment to Kelly and Straughn, and dismissed Ventry's claims against them, without prejudice. *Docs. 74 & 76.*

## II. Discussion

### A. Motion for Summary Judgment by APRN Griswold & Cantrell[4]

After Defendants filed their summary judgment papers (*Docs. 78–80*), the Court entered an Order, dated February 25, 2021, advising Ventry that: (1) he had a right to file a Response to the Motion for Summary Judgment; (2) he could not rest upon the allegations in his pleadings, but must instead meet proof with proof; (3) his Response should include his legal arguments, as well as evidence establishing that there is a genuine issue of material fact; (4) he must file a "Statement of Disputed Facts" indicating whether he "agree[d]" or "disagree[d]" with the factual statement in *each* of the numbered paragraphs in the Defendants Statement of Undisputed Facts; and (5) his Response and Statement of Undisputed Facts must be filed no later than March 8, 2021. *Doc. 83*.

On March 11, 2021, Ventry filed a Response to the Summary Judgment Motion (*Doc. 84*) but did not file a separate Statement of Disputed Facts or otherwise dispute any of facts set out in Defendants' Statement of Undisputed Facts (*Doc. 79*). Accordingly, all of those facts, which form the basis for Defendants' Motion for

---

[4] Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). An assertion that a fact cannot be disputed, or is genuinely disputed, must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

Summary Judgment, are now deemed to be undisputed. *See* Fed. R. Civ. P. 56(e) ("If a party … fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion."); *Jackson v. Ark. Dep't of Educ. Vocational & Technical Div.*, 272 F.3d 1020, 1027 (8th Cir. 2001) (citing Local Rule 56.1(c) in concluding that the plaintiff "forfeited her ability to contest the facts presented" by defendant by failing to respond to defendant's summary judgment motion).

Ventry's pleadings alleged that APRN Griswold was deliberately indifferent to his serious medical needs because she: (1) brought him a cup of water but placed it out of reach, refused to get it for him even though he was unable to move, and then left him alone again in the isolation room; (2) refused to draw blood to see if he had been poisoned or give him an IV to help with dehydration; (3) released him from the ward with no assessments or discharge notes, forcing him to return to his barracks; and (4) denied his requests to be seen by a cardiologist, even though testing showed an elevated heart rate. *Doc. 2-1 at 12, 17, 19-22; Doc. 4 at 11-19*. Ventry claims that Nurse Cantrell acted with deliberate indifference towards his serious medical needs while he was in the infirmary on December 7, 2021, when he requested his blood-pressure medicine, and she told him to walk back to his barracks to get it, instead of retrieving his medication from his barracks for him. *Doc. 2-1 at 13-15; Doc. 79, Exh. B at 60–61*.

Along with their Statement of Undisputed Facts, the Defendants also submitted Ventry's relevant medical records, a transcript of Ventry's deposition, and the Affidavit of Nannette Vowell, M.D.[5] *Doc. 79, Exh. A, B & C.* The medical records reflect that Ventry was initially evaluated by Nurse Seals, in the early morning of December 7, 2017, when Ventry walked into the prison's Health Services Office with complaints of chest pains, trouble breathing, and tingling sensations. *Doc. 79, Ex. A at 1.* At that time, Seals noted that Ventry had no difficulty walking into the infirmary, walking to the chair so she could take his vital signs, or walking to the examination room for an EKG. *Id.* She also noted that "[Ventry] originally says that he can't breath; however O2 is 99 on room air. . . . inmate then says that he can't move; however he is moving his arms and feet and able to hold his head up without assistance . . . ." *Id.*

At approximately 5:27 a.m. on December 7, 2017, Seals called the doctor, who instructed her to: (1) give Ventry 600 milligrams of ibuprofen; (2) admit him to the infirmary for observation; and (3) have APRN Griswold examine him when she arrived for her shift. *Id.* As instructed, Seals had Ventry placed in the infirmary ward, noting that officers assisted with the move as "[Ventry] stated he can not walk," *Id.*

---

[5] Nannette Vowell is a medical doctor licensed to practice medicine in the State of Arkansas. *Doc. 79, Exh. 3 at 1.* She is employed by Wellpath, LLC, the medical care provider for inmates housed within various ADC units, and practices medicine primarily at the ADC's Ouachita River Correctional Unit. *Id.*

Seals also offered Ventry some water at that time and discussed with him the need for adequate hydration. *Id.*

According to the undisputed facts, at approximately 10:00 a.m. on December 7, 2021, APRN Griswold and another APRN examined Ventry and released him back to the barracks. *Doc. 79, Ex. A at 2; Ex. B at 46–48*. Ventry was sitting up for the examination and was able to fully ambulate at that time. *Id., Ex. A at 2*.

Ventry returned to the infirmary around noon the same day, complaining of chest pain and tingling in his extremities. *Id. at 3*. The medical records note that Ventry could ambulate independently, his vital signs were normal at that time, and he had no signs of dehydration. *Id*. The medical records from this visit also stated, "[i]t appears that inmate is randomly beginning to hyperventilate trying to increase heart rate. While sitting alone, inmate was observed breathing normally with even and unlabored respirations." *Id.*

The records note that APRN Griswold reviewed Ventry's EKG, which showed sinus tachycardia,[6] and ordered Nitro 0.4 milligrams one time for Ventry. *Id.* Later, at approximately 2:00 p.m., the medical records reflect that APRN Griswold did not believe Ventry's issues were cardiac related, "that there was nothing else to treat," and she directed that Ventry be released from the infirmary. *Id.*

---

[6] Sinus tachycardia is a medical term for fast heart rate. *Doc. 79, Exh. 3 at 2*.

Ventry returned to the infirmary at approximately 4:18 p.m., with the medical records again noting that he ambulated without difficulty and had a normal gait. *Id. at 4*. At that time, APRN Griswold did a flu swab and tested for strep throat, with Ventry testing negative for each. *Id.* APRN Griswold ordered blood work, then released Ventry back to his barracks across the hall. *Id.* At that time, Ventry's vital signs were normal. *Doc. 79 at ¶ 12*.

Ventry returned to the infirmary at 7:17 p.m. the same day, again complaining of chest pain. *Doc. 79, Exh. A at 5*. After a complete physical examination, APRN Griswold made no significant findings, and encouraged Ventry to take his medications as directed, and increase his water intake. *Doc. 79 at ¶ 13; Exh. A at 5; Exh. C at 2–3*. APRN Griswold noted that Ventry had 3–4 cups of water in the infirmary with no evidence of nausea or vomiting. *Doc. 79 at ¶ 13*. APRN Griswold directed Ventry to follow up in one week. *Id*.

In his deposition, Ventry testified that: (1) he was able to walk back to the barracks from the infirmary under his own power; (2) he "ate some ramen noodle juice seasoning" when he returned to his barracks; and (3) he began feeling better the following day. *Id. at ¶¶ 14–15; Ex. B at 57–60*.

When Ventry was asked during his deposition what APRN Griswold did to violate his constitutional rights, Ventry testified that "[s]he refused to give me intravenous fluids." *Doc. 79, Exh. B at 64*. According to Ventry, he believed he was

dehydrated, needed to be given fluids via an IV, and asked for an IV, but APRN Griswold said he did not need one. *Id.* Ventry further testified that his only claim against APRN Griswold is for her refusal to give him an IV. *Id. at 65*.

When Ventry was asked what Defendant Cantrell did specifically to violate his constitutional rights, Ventry testified that he asked Cantrell for his medications while he was in the infirmary, and she told him he would have to walk to the barracks to get his medicine. *Id. at 60–61*.

In the professional opinion of Dr. Nannette Vowell, after reviewing Ventry's relevant medical records, Ventry: (1) had appropriate access to healthcare and was provided with appropriate care and treatment for his complaints on December 7, 2021; (2) did not require intravenous fluids on December 7, 2017; and (3) could ambulate to retrieve his medication. *Doc. 79, Ex. C at 3–4*. Dr. Vowell's opinions are stated to a degree of medical certainty and are consistent with sound medical practices. *Id. at 3–4*.

"Whether a prison's medical staff deliberately disregarded the needs of an inmate is a factually-intensive inquiry." *Meuir v. Greene Cnty. Jail Employees,* 487 F.3d 1115, 1118 (8th Cir. 2007). To defeat summary judgment, a "plaintiff-inmate must clear a substantial evidentiary threshold to show that the prison's medical staff deliberately disregarded the inmate's needs by administering an inadequate treatment." *Id*.

Moreover, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (quoting *Dunlany v. Carnahan,* 132 F.3d 1234, 1240 (8th Cir. 1997) (alterations added)); *Meuir,* 487 F.3d at 1119. Instead, he must present *evidence* demonstrating that the "course of treatment, or lack thereof, so deviated from professional standards that it amounted to deliberate indifference in violation of his Eighth Amendment right to be free from cruel and unusual punishment." *Dunlany,* 132 F.3d at 1243 (citation and alterations omitted).

Because Ventry has provided *no evidence* to show that the treatment he received "so deviated from professional standards that it amounted to deliberate indifference," his claims against APRN Griswold and Cantrell fail.[7] Accordingly, Defendants' Motion for Summary Judgment should be granted.

---

[7]While the Court has considered Ventry's sworn statements in his § 1983 pleadings and his deposition, which was attached to Defendants' Statement of Undisputed Facts (*Doc. 79, Ex. B*), nothing in those documents creates a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(c) (a party can show the existence of a genuinely disputed material fact through "depositions [and] affidavits or declarations"); *Ward v. Moore*, 414 F.3d 968, 970 (8th Cir. 2005) (providing a verified complaint made under threat of perjury "is the equivalent of an affidavit and can serve as [a plaintiff's] response to [a] defendant's summary judgment motion); *Roberson v. Hayti Police Dept.*, 241 F.3d 992, 994–95 (8th Cir. 2001) (complaint signed under penalty of perjury is equivalent of a verified complaint, and a plaintiff may rely on the facts stated therein just as if they had been stated in an affidavit).

## B.  Defendant Seals Should Be Dismissed for Lack of Service

The initial summons issued for Defendant Mary Seals was returned unexecuted because she was not on the list of current employees/independent contractors for the ADC's healthcare provider. *Doc. 25*. After the Court was informed that Seals was employed by a different entity, the Court directed that service be attempted on Seals at Maxim Healthcare Services at an address in Memphis, Tennessee. *Doc. 34 at 2–3*. That summons was returned "executed," but the return receipt indicated it was signed by "Alveta Burnett" who did *not* check the "Agent" box on the return receipt when he or she signed for the certified mail addressed to Seals. *Doc. 38; Doc. 59 at 3*.

After Seals did not file an Answer or responsive pleading within the time for doing so, the Court entered an Order to Show Cause, giving her 14 days to file a Response explaining why the Clerk should not enter a default against her and directing the United States Marshall to serve a copy of the Order on Seals at the same Maxim Healthcare Services address in Memphis. *Doc. 50*. When no Response was filed by Seals, Ventry filed a Motion for Entry of Default and a Declaration in Support. *Docs. 56 & 57*. The Order for Show Cause attempted to be served on Seals was subsequently returned unexecuted. *Doc. 63*.

On January 13, 2020, the Court denied Ventry's Motion for Default, finding that it could not be determined, based on the record, "whether there is legally

sufficient proof of service for Seals." *Doc. 59 at 2*. Instead, the Court noted, "the record show[ed] only that an unknown individual signed the certified mail return receipt, without indicating that he or she was an agent legally authorized to accept service of process on behalf of Seals." *Id. at 4*. The Court explained that, to keep the case moving forward, it would enter a Scheduling Order setting deadlines for conducting discovery and filing dispositive motions, and "Ventry may utilize the discovery process to attempt to locate and obtain proper service on Seals." *Id. at 5*.

The initial Scheduling Order set an April 13, 2020 discovery deadline. *Doc. 58*. Discovery was temporarily stayed and the initial discovery deadline was vacated, following a Motion for Summary Judgment on the issue of exhaustion (*Doc. 67*), but a Revised Scheduling Order was later entered lifting the stay and setting a new discovery deadline of January 8, 2021. *Doc. 77*.

The discovery deadline expired six months ago, and despite having learned, eighteen months ago, that service on Seals had not been accomplished, Ventry has never provided a proper service address for Seals. Accordingly, Defendant Seals should be dismissed from this action, without prejudice, pursuant to Federal Rule of Civil Procedure 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant . . . ."); *Lee v. Armontrout*, 991 F.2d 487, 489 (8th Cir. 1993)

11

(affirming dismissal of unserved defendants explaining that it is the prisoner's responsibility to provide a proper service address for each defendant).

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. The Summary Judgment Motion (*Doc. 78*) filed on behalf of Defendants APRN Griswold and Cantrell BE GRANTED.

2. All claims against APRN Griswold, Cantrell, and Seals BE DISMISSED, WITHOUT PREJUDICE.

DATED this 12th day of July, 2021.

_____
UNITED STATES MAGISTRATE JUDGE